**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAY SALYERS, on behalf of himself and all others similarly situated, | |
| Plaintiff, | Civil Action No. 2:23-cv-04802-WB |
| v. | **JURY TRIAL DEMANDED** |
| A.J. BLOSENSKI, INC., WASTE CONNECTIONS, INC., and WASTE CONNECTIONS US, INC., | **CLASS ACTION** |
| Defendants. | |

## AMENDED CLASS ACTION COMPLAINT

Plaintiff Jay Salyers, individually and on behalf of all others similarly situated (the "Class"), through his undersigned counsel, alleges as follows against Defendants A.J. Blosenski, Inc. ("A.J. Blosenski"), Waste Connections, Inc. ("Waste Connections") and Waste Connections US, Inc. ("Waste US," together with A.J. Blosenski and Waste Connections, the "Defendants").

### INTRODUCTION

1.      A.J. Blosenski is a waste management company that provides trash removal and recycling hauling services throughout the Commonwealth of Pennsylvania ("Pennsylvania") and in two counties in the State of Delaware ("Delaware").  Texas-based Waste Connections acquired A.J. Blosenski in September 2022.

2.      Defendants consistently fail to provide their trash removal and recycling hauling services to their paying customers on the agreed-upon days and at the agreed-upon frequencies. Defendants have, in fact, admitted to doing so:

3.    Despite these service interruptions, Defendants have chosen not to refund customers for payments they have made or the significant "fuel and material surcharges," which are baseless in the first place, that they imposed.

4.    Customers have instead been left with piles of rotting garbage, which attract animals and create serious public health hazards.

5.    Plaintiff brings this lawsuit to force Defendants to (1) provide the trash and recycling hauling services that they were paid to provide; (2) issue full refunds for the baseless fuel and material surcharges they impose; and (3) issue full refunds for payments made and any permissible surcharges incurred by customers for trash removal and recycling hauling services they never received.

**PARTIES**

6.    Plaintiff Jay Salyers is a citizen and resident of Malvern, Pennsylvania.

7.    Defendant A.J. Blosenski is a Pennsylvania corporation with a principal place of business located in Honey Brook, Pennsylvania.

8.     Defendant Waste Connections is a Canadian corporation with a principal place of business located in The Woodlands, Texas.

9.     Defendant Waste US is a Delaware corporation with a principal place of business located in The Woodlands, Texas.  Upon information and belief, Waste US oversees Waste Connections's operations in the United States.

10.     Waste Connections acquired A.J. Blosenski in 2022.  A.J. Blosenski is now a wholly-owned subsidiary of Waste Connections.  Waste Connections, a publicly traded company, regularly monitors its wholly-owned subsidiaries' financial risk arising from operating activities and regularly dispatches financial risk managers to their headquarters.

## JURISDICTION AND VENUE

11.     This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) at least one member of the Class is a citizen of a state different from that of Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (c) the Class consists of more than 100 Class members, and (d) none of the exceptions under 28 U.S.C. § 1332(d) apply to this action.

12.     The United States District Court for the Eastern District of Pennsylvania has jurisdiction over Defendants because Defendants are registered to do business in Pennsylvania, transact business in Pennsylvania, have purposely availed themselves of the laws of Pennsylvania, and because many of the specific events giving rise to this action occurred in Pennsylvania.

13.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Defendants have marketed, advertised, and otherwise conducted extensive business, within this District.

## FACTUAL BACKGROUND

### I.    Background on A.J. Blosenski and its Purchase by Waste Connections in 2022

14.    A.J. Blosenski is a trash and recycling hauler that serves residential, commercial, industrial, municipal, and other individual and corporate customers in several counties throughout Pennsylvania and in two counties in Delaware.  The company describes itself as "one of the largest privately held trash and recycling companies in Pennsylvania."[1]

15.    Prior to being purchased by Waste Connections, A.J. Blosenski was a family-owned and operated business.

16.    Anthony J. Blosenski, Sr., founded the company and 1984 and he, along with several generations of Blosenskis, expanded it to include several hundred employees and a fleet of more than two hundred vehicles.

17.    Texas-based Waste Connections acquired Blosenski in September 2022.

18.    Waste Connections has more than 8 million customers across 43 states and six Canadian provinces.

### II.    Defendants' Trash Removal and Recycling Hauling Services

19.    Customers make quarterly payments to Defendants in exchange for the provision of trash removal and recycling hauling services.

20.    Terms of service typically last one or three years with customers having the option of once or twice weekly trash pick-up with weekly recycling pick-ups.

### III.    Defendants' Systematic Failure to Provide the Agreed-Upon Services

21.    Defendants routinely fail to provide customers with the agreed-upon trash removal and recycling hauling services.

---

[1] https://www.ajblosenski.com/ (last accessed on January 17, 2024).

22.    The number of Defendants' missed pick-ups has grown over time, customer satisfaction has diminished, and customer service representatives are very difficult to reach.

23.    A. J. Blosenski's website states that customers should see an automatic credit to their accounts, reflected on their next invoice if their trash or recycling is not collected within 72 hours:[2]

**— WHEN WILL I SEE MY CREDIT FOR NON-COLLECTION OF TRASH OR RECYCLE?**

If your trash or recycle was not collected within 72 hours, an automatic credit will be applied to your account and reflected on your next invoice. If it is the last week of the month, this may not reflect until the following month.

24.    Despite this, Defendants do not refund customers for these service failures and, amazingly, continue to increase rates and charges notwithstanding.

25.    A sampling of complaints made to the Better Business Bureau about Defendants are below.

---

[2] https://www.ajblosenski.com/faqs/ (last accessed January 17, 2024).

**Complaint Type:**
Problems with Product/Service
**Status:**
Unanswered

 **Initial Complaint**
06/10/2022

I have been a long standing customer of AJ Blosenski for over 20 years. Over the last 2-3 years service has been sporadic no longer consistently delivering twice a week pick up. No reduction in rate when this happens. I recently switched to a much cheaper company after AJ had raised rates twice in a very short period of time all the while continuing to charge for twice a week service but consistently not providing it. When I first signed contract I was promised a fixed rate and a once a month bulk pick up. They now do not want to let me out of contract stating I need to pay almost 260.00 to switch. A contract works two ways, you pay for a service and it is delivered consistently. I have called a couple times in the last few years and have had to bypass the rude initial customer service to get anywhere. I just want out without a penalty since they are not upholding their part of the deal either.

**Complaint Type:**
Problems with Product/Service
**Status:**
Unanswered

 **Initial Complaint**
06/07/2021

AJ Blosenski trash and recycling has been giving me the run around since last year. I pay to have recycling picked up but it is always picked up days later or not at all. I have made many calls to them for pick up and they just tell me someone is working on it. I want a bill reduction and on time pickups. A very unprofessional business.

26.    A sampling of complaints made on Yelp about Defendants are below.



**Dan G.**
PA, PA
⊙ 0  ⊡ 1

 8/29/2023

AJB has missed pickup 4 weeks in a row. My neighbor is full of recycling piled up outside everyone's houses. They claim it is due to staffing shortages but the responses their account manager gives our HOA indicate a lack of urgency and no sense of being pro-active. All of the residents of my community are pushing our HOA to drop AJB in favor of a different provider.

The fact that they are experiencing such a dire staffing shortage shows that they aren't willing to pay employees at market value, and their customers are the ones who pay the price of this short-term thinking. The excuses change every week, and they never reach out pro-actively to indicate what steps they are taking to solve the problem. If we did not reach out to them, I doubt they would even know there was a problem.

I give this company a 0/10



**Thomas B.**
PA, PA
⊙ 0  ⊡ 1

 8/3/2023

They are inconsistent with trash pickups. They went from two days a week to one and didn't adjust billing. It is very difficult to get a hold of someone and they continue to blame staffing shortages. Prior to being brought I never had a issue now the customer is just plain awful



**Jaime B.**
Morgantown, PA
⊙ 0  ⊡ 4

 8/2/2023

Zero star rating. They DO NOT pick up your trash. It goes weeks and they say there is nothing they can do. They never answer their phone AND they continue charging you. Stay far away from this terrible company!



**Pat H.**
Ambler, PA
7  18

 7/25/2023

No stars for this company.  Could not post unless I hit the star.  They treated their customers horribly, haven't refunded their customers and didn't pick up their trash bin as they were supposed to.  The containers are their property and responsibility.  Shame on this company for treating their customers disrespectfully.



**Greg H.**
Philadelphia, PA
0  1

 7/21/2023

I'm fed-up with AJ and the no pickups. I think we the people should do their job for them and delivery our trash to their office.
Quarterly rate increase, weekly pickup decrease. Customer service is nonexistent after multiple calls. Time to switch to Whitetail for a 30% savings! Tell a friend!!



**Lisa U.**
Phoenixville, PA
0  1

7/20/2023

DO NOT USE A.J. Blosenski FOR RESIDENTIAL TRASH SERVICE.
Many times during the last several years, our trash and/or our recycling hasn't been picked up.
Last week, our trash wasn't picked up, but our recycling was. We had to call them. Today I got home at 7:45 pm, and..... the same thing happened.
THIS IS UNACCEPTABLE.



**Luke S.**
PA, PA
📷 0  ⬛ 1

 7/17/2023

Over the last 3 months they have consistantly NOT picked up either the trash or the recyclables. I tried to contact them and voice mail said they would get back to me, they did not. the following week after on hold for a very long time they answered. I said they should at least inform us when there is a problem and when they will reschedule. Their response was most people can assume we are doing our best, but I guess you're one of those people who need attention. this was the first time I ever spoke to them and only the second time tring to contact them. very rude. I wish I could give them 0 rating.



**Laird I.**
Quakertown, PA
📷 0  ⬛ 1

 7/7/2023

Terrible customer service. Do not return calls after they stress great customer service. My trash has not been picked up in 3 weeks. They are discontinuing trash pick up July 17th in our area, this is July 7. Guess they think they do not need to fill their obligation.



**Brian M.**
PA, PA
📷 0  ⬛ 3  🖼 1

 6/28/2023

I echo all the other comments here on these reviews. I've had to haul off our garbage and recycling often over the past few months because of their failure to provide service. It is impossible to get anyone with customer services to answer the phone anymore. They will not return a call regardless of whether you leave a voicemail or contact them on their website. I finally cancelled our service this month and rather than pick up the trash the final week, they pulled the bags out of the can and left them in my drive. I will NEVER use this gaggle of morons again.



**Jennifer M.**
Wayne, PA


⭐ ☆ ☆ ☆ ☆  6/15/2023

My trash has not been picked up for three weeks. Last year they missed pickups here and there. I asked for a credit on my bill. I was told they still have to pay people even if they do not show up for work. Hmmm...but they aren't paying for gas and maintenance if there is no one driving the trucks. Someone from the Township needs to investigate what is going on. Our neighborhood is has litter all over. Is this going unnoticed by everyone but the home owners? Is this legal? They should not be allowed to bill us for service they are not providing.



**Emily K.**
PA, PA


⭐ ☆ ☆ ☆ ☆  5/22/2023

Sadly, looks like I'm not the only one that is experiencing terrible service. They've missed my house for 2 weeks in a row and every time I call, they say the trash will be picked up within a day or so. Well....never happens. We are on week 3 of no service. If you have a choice in your trash service, do not use them.



**Mike M.**
Topton, PA


⭐ ☆ ☆ ☆ ☆  4/14/2023

Absolutely awful. We switched for their recycling. My trash has sat out for 11 days and no one has picked it up. Every time I call they " put in a ticket" and tell us it will be the next day. Completely awful service and no one seems to care. I would never recommend them. Awful. Should be 0 stars



**Honey N.**
Philadelphia, PA
⌂ 0  ⊙ 1

 7/7/2022

"A J Blows" should be their name.
They lie over and over again about someone coming out for pickup when they've missed it the first time.  They took a bin I personally purchased for when we had more than a few bags; than gave me a broken one of theirs which was same size -that took weeks to make "right" and several phone calls.  They changed their pricing with no warning.
I was done.
I scheduled for canceled service as contract reads at 90 days.  I asked repeatedly to make sure my information was removed and they did not charge me the following quarter.
Guess what..They still charged my bank account; told me it would take WEEKs to refund me and told me my service still showed active in their system.

A J Blosenski has terrible customer service and generally do not care about the inconvenience or misstreatment of their clients.

27.     A sample complaint posted to pissedconsumer.com about Defendants is below.

 TODD M Vth

### *** POOR SERVICE

Nov 25, 2020      1.0

We started service about 2 months ago everything was fine until last week. The recycling crew picked up a box of cardboard but failed to empty the 2 full bins. I called and received an apology and was told that it would be picked up the next day. NEVER HAPPENED! This week the bins are overflowing and unemptied, another call and another promise to have the crew pick up it today yet. Guess what, another Empty Promise! I'm cancelling my service and going with another hauler. If this is what Customer Service has come to in America it's no wonder this country is in the shape it's in! Promises (LIES) and *** Poor Service. GO WITH ANOTHER COMPANY!

**Cons:** Pick up recycling when they feel like it

**Preferred solution:**  Deliver product or service ordered

**User's recommendation:**  fIND A MORE REPUTABLE COMPANY TO DEAL WITH!

28.    A sample complaint posted to Angi is below.

**Randi K.**                                                                        06/28/2023

 **1.0**

They have gone completely mad, no trash pick up for third week in a row and no recycling for 4 weeks. Every week is an excuse for not providing the services we paid for. So it's credit card dispute and hire new trash company time, we're done!!!

29.    A sampling of complaints posted to nicelocal.com about Defendants are below.

**Joseph B.**    October 18, 2022, 12:42 am

Decided to hire these guys after previous hauler dropped coverage for our area. Very nice sales pitch on the phone. But … only 3 weeks in & 2 missed pick-ups. Not good. How long can we hold our trash? Grounds for termination unless they can persuade me otherwise. Willing to re-grade them but burden is on them, not me. I'm within my rights to terminate now.

**Fred M.**    June 5, 2022, 1:28 am

Horrible. Moved into a new construction community and have had to call them every week for a month because they forget to come by. Will be switching to Whitetail ASAP.

**Shane S.**    June 2, 2022, 3:24 am

Literally will not pick the trash up in my area. We got missed this entire week and I bet you I won't see a cent of any kind of reimbursement for failure to deliver the services I paid for. Save yourself some time and your hard earned money and switch to white tail. They're cheaper and it seems like they actually do their job.

30.     Defendants, like other large service providers, monitor and keep track of consumer reviews and complaints.  This is diligence that large companies like Defendants routinely do when providing such services.

## IV.     Mr. Salyer's Experience with Defendants

31.     Mr. Salyers has been a customer of A.J. Blosenski since in or around 2018.

32.     He initially agreed to pay Defendants $105 per quarter over a three-year term for trash removal and recycling hauling services.  This agreement was confirmed in writing by email but, upon information and belief, no other applicable written documentation exists.

33.     Mr. Salyers' continued, and continues, to use and pay for Defendants' services since the expiration of this initial term.  He currently pays more than $130 per quarter for trash removal services twice per week and recycling hauling services once per week.

34.     Mr. Salyers has experienced many of the service shortfalls described above, including Defendants failure to perform trash pick-ups twice per week as agreed to.

35.     Mr. Salyers called Defendants in or around July 2023 to address their service deficiencies.   Unfortunately, Defendants never connected Mr. Salyers with a customer representative or otherwise corrected their shortcomings.

36.     Defendants, as part of their billing for trash removal and recycling hauling services, have also imposed "fuel and material surcharges" on Mr. Salyers.

37.     These surcharges were imposed by Defendants without justification or appropriate authorization and did not bear a reasonable relationship to any actual increase in costs incurred by the Defendants.

38.    To the extent the surcharges were appropriate, Defendants failed to refund Mr. Salyers for payments made for fuel and material surcharges imposed in connection with trash removal and recycling hauling services never rendered.

39.    In November 2023, Defendants notified Mr. Salyers that it would no longer perform recycling pick-ups once per week as agreed to. Defendants will now only pick up recycling once every two weeks.

40.    Defendants have not advised Mr. Salyers whether he will receive reimbursement for this decrease in services.

**V.    Defendants Caused Economic Harm to Mr. Salyers and Members of the Class**

41.    Mr. Salyers and the Class entered into agreements with Defendants to provide certain trash removal and recycling hauling services. When Mr. Salyers and other members of the Class purchased and paid for the trash removal and recycling hauling services that they bought, as described above, they accepted offers that Defendants made. The offer was to provide the trash removal and recycling hauling services as described by Defendants, for the price advertised.

42.    That the trash and recycling services would be provided on the agreed-upon days, intervals, and costs were material terms of the agreements.

43.    Mr. Salyers and Class members performed their obligations under the agreements by paying for the trash removal and recycling hauling services that they purchased.

44.    Defendants breached their agreements by failing to provide Mr. Salyers and other Class members with the services as contracted-to for pricing they agreed-upon. Defendant instead provided services that fell short of what was required by the parties' agreements and imposed baseless surcharges to boot.

45.     In addition, Defendants' material omissions and false representations concerning their trash removal and recycling hauling services were deceptive and allowed them to charge more for those services than they could have had the deficiencies been disclosed to consumers. Consumers, like Mr. Salyers, would not have purchased the services or, at a minimum, would have paid substantially less for them, had they known of Defendants' shortcomings.  Thus, as a result of Defendants' misrepresentations and omissions, Plaintiff and Class members sustained economic injuries.

## CLASS ACTION ALLEGATIONS

46.     Plaintiff brings this action on his own behalf and on behalf of the following Class pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3) and/or (c)(4):

> Any and all purchasers of trash removal and/or recycling hauling services from A.J. Blosenski during the applicable statute of limitations.

47.     The following people are excluded from the Class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or its parents have a controlling interest and their current employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

### *Numerosity*

48.     The proposed Class contains members so numerous that separate joinder of each member of the Class is impractical.  Based on the pervasive provision of trash removal and

recycling hauling services by Defendants, there are hundreds of proposed Class members (or more).

### *Commonality*

49.    There are questions of law and fact common to the proposed Class.  Common questions of law and fact include, without limitation:

- Whether Defendants provided their trash removal and recycling hauling services to Plaintiff and members of the Class as agreed-upon;

- Whether Defendants had a legal basis for charging Plaintiff and members of the Class the "fuel and material surcharges" that they imposed;

- Whether Defendants were unjustly enriched by the sale of their deficient trash removal and recycling hauling services and imposition of baseless surcharges;

- Whether Defendants engaged in an unlawful deceptive practice in marketing and selling their deficient trash removal and recycling hauling services;

- Whether Plaintiff suffered ascertainable loss as a result of Defendants' conduct;

- Whether Defendants should be enjoined from continuing to provide deficient trash removal and recycling hauling services and imposing baseless surcharges; and

- What damages are needed to compensate Plaintiff and the proposed Class.

### *Typicality*

50.    Plaintiff's claims are typical of the proposed Class.  Like the proposed Class, Plaintiff incurred costs for trash removal and recycling hauling services he never received from Defendants.  Also like the proposed Class, Plaintiff incurred baseless surcharges for supposed fuel and material cost increases experienced by Defendants.

*Adequacy*

51.     The interests of the members of the proposed Class will be adequately protected by Plaintiff and his counsel.  Plaintiff's interests are aligned with, and do not conflict with, the interests of the members of the proposed Class that they seek to represent.  Moreover, Plaintiff has retained experienced and competent counsel to prosecute the Class's claims.

*Predominance and Superiority*

52.     The prosecution of separate actions by individual members of the proposed Class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the Class.  For example, individual adjudication would create a risk that the deficient services—which Defendants admit occurred due to their inadequate staffing—violate the agreements of some proposed Class members, but not those of others.  Common questions of law and fact predominate over any questions affecting only individual members of the proposed Class.  These common legal and factual questions arise from certain central issues which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any particular Class member.  For example, a core liability question is common: whether Defendants have delivered trash removal and recycling hauling services less than those promised to Plaintiff and Class members.  Another common question is whether the surcharges imposed by Defendants were of justified, authorized, or bore any reasonable relationship to any actual increase in costs incurred by the Defendants.

53.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would

be unduly burdensome to have individual litigation of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

54.    Alternatively, certification may be appropriate as to individual issues as those issues will raise common questions applicable to all Class members and materially advance the litigation.

### *Ascertainability*

55.    The Class is defined by reference to objective criteria, and there is an administratively feasible mechanism to determine who fits within the Class. The Class consists of purchasers and owners of certain trash removal and recycling hauling services, and Class membership can be determined using records in Defendants' and other databases.

### *Injunctive and Declaratory Relief*

56.    Defendants acted and refused to act on grounds that apply generally to the Class, so injunctive and/or declaratory relief is appropriate with respect to the entire Class. Defendants uniformly breached agreements with and imposed baseless surcharges on members of the Class, Defendants concealed facts from and made material misrepresentations to the Class, and Defendants have destroyed and may still be destroying evidence relevant to the allegations of the Class.

## CLAIMS

### Count I
### *Breach of Contract, including the Covenant of Good Faith and Fair Dealing*
### (on behalf of Plaintiff and the Class)

57.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

58.     Plaintiff and Class members entered into agreements when they purchased trash removal and recycling hauling services from Defendants.  Valid agreements existed between Plaintiff (and the Class) and Defendants.

59.     The contracts provided that Plaintiff and Class members would pay Defendants for the trash removal and recycling hauling services purchased.

60.     The contracts further required that Defendants provide Plaintiff and Class members with those services as agreed upon, including on the contracted-to days, at the contracted-to frequencies, and for the contracted-to prices.  These were specific and material terms of the contracts.

61.     Plaintiff and Class members paid Defendants for the trash removal and recycling hauling services they ordered, and satisfied all other conditions of their contracts.

62.     Defendants breached the contracts with Plaintiff and Class members by failing to provide agreed-upon waste management services, as described more fully above.  Defendants also breached the contracts with Plaintiff and Class members by imposing baseless "fuel and material surcharges."

63.     In addition, there exists an implied covenant of good faith and fair dealing in all contracts that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.  Good faith and fair dealing—in connection with executing contracts, discharging performance, imposing charges, and other duties according to their terms—means preserving the spirit, not merely the letter, of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

64.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

65.     The implied covenant of good faith and fair dealing applies to the performance and enforcement of contracts and limits the parties' conduct when their contract defers decision on a particular term, omits terms, or provides ambiguous terms.

66.     Defendants have breached the covenant of good faith and fair dealing and abused its discretion in its contract as described herein.  Specifically, Defendants should not have used its discretion to unilaterally cancel trash removal and recycling hauling services or impose baseless surcharges in the manner they saw fit.  Their agreements with their customers do not provide any basis for the cancellation of services for foreseeable business complications or the imposition of surcharges without justification, appropriate authorization, or any reasonable relationship to any actual increase in costs incurred by the Defendants.

67.     As a direct and proximate result of Defendants' breaches, Plaintiff and Class members were deprived of the benefit of their bargained-for exchange and have suffered damages in an amount to be established at trial.

**Count II**
*Promissory Estoppel*
**(on behalf of Plaintiff and the Class)**

68.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

69.    Defendants made promises to provide trash removal and recycling services for specific prices on specified days and at specified intervals.

70.    Defendants should have reasonably expected to induce Plaintiffs and class members into paying for said services based on their promises and prices.

71.    Plaintiff and Class members reasonably and substantially relied upon the promises of Defendants to their detriment when they purchased the trash removal and recycling services offered by Defendants.

72.    Plaintiff and class members would not have purchased said trash and recycling services had they known they would not receive the services promised or incur additional baseless surcharges.

73.    Injustice can only be avoided by enforcement of Defendants' promises.

74.    As a direct and proximate result of Defendants' misrepresentations, Plaintiff and Class members suffered damages in an amount to be established at trial.

### Count III
### *Unjust Enrichment*
### (on behalf of Plaintiff and the Class)

75.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

76.    Plaintiff and Class members purchased waste removal services from Defendants. They reasonably believed that the trash removal and recycling services would be performed as agreed-upon—according to promised pricing, on promised days, and at promised intervals. Plaintiff and Class members did not, and could not, have known that the services would be interrupted and deficient or that they would incur baseless surcharges.

77.    Plaintiff and Class members conferred a tangible and material economic benefit upon Defendants by purchasing services.

78.    In exchange for the purchase price, Defendants provided trash removal and recycling services they admit to being deficient and imposed surcharges without a basis for doing so.  Defendants knew and appreciated the benefits they incurred from consumers purchasing their services.

79.    Thus, Defendants are aware of, and have retained, the unjust benefit conferred upon them by Plaintiff and the Class members.

80.    Defendants received a direct and unjust benefit, at the Plaintiff's expense.

81.    Plaintiff and the Class seek restitution.

**Count IV**
*Fraud*
**(on behalf of Plaintiff and the Class)**

82.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

83.    As alleged in detail above, Defendants made materially misleading misrepresentations and omissions concerning the quality of its trash removal and recycling hauling services that Defendants knew were false or acted with reckless disregard as to the truth of the same.  Defendant also concealed information concerning the deficiencies of its services and the potential for service interruptions.

84.    In deciding to purchase trash removal and recycling hauling services from Defendants, Plaintiff and the Class reasonably relied on Defendants' misrepresentations and omissions to form the mistaken belief that Defendants would provide reliable trash and recycling hauling services at agree-to prices.

85.     As alleged above, Defendants' fraudulent conduct was knowing and intentional. The misrepresentations and omissions made by Defendants were intended to induce and actually induced Plaintiff and Class members to purchase their services.  Plaintiff would not have purchased the services had he known of the deficiencies.  Class-wide reliance can be inferred because Defendants' misrepresentations and omissions were material, *i.e.*, a reasonable purchaser would consider them important to their purchase decision.

86.     Defendants had a duty to disclose information about their service interruptions because they had superior knowledge and access to facts about their service deficiencies.  A reasonable consumer could not have expected or known that Defendants' services would be routinely interrupted.

87.     Plaintiff and Class members were injured as a direct and proximate result of Defendants' fraudulent misrepresentations and omissions.  Plaintiff and the Class are entitled to damages and other legal and equitable relief as a result.

88.     Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**Count V**
***Negligent Misrepresentation***
**(on behalf of Plaintiff and the Class)**

89.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

90.     Defendants had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the sale of their trash removal and recycling services.

23

91.     Defendants breached their duty to Plaintiff and the Class by advertising, marketing, distributing, and selling services to Plaintiff and the Class that are not performed as advertised by Defendants, as described above.  Defendants knew or should have known that it was not capable of carrying out the trash removal and recycling hauling services as represented and promised to Plaintiff.

92.     As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered actual damages in that they have not received refunds or reimbursements for services, and associated costs, that were never provided.

**Count VI**
***Violation of the Pennsylvania Unfair Trade Practices and***
***Consumer Protection Law (UTPCPL)***
**(on behalf of Plaintiff and the Class)**

93.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

94.     Plaintiff and Class members are "persons" under UTPCPL, 73 P.S. § 201-2.

95.     Plaintiff and Class members purchased Defendants' trash removal and recycling hauling services primarily for personal, household, or family use.

96.     Defendants' actions as set forth herein occurred in the conduct of trade or commerce as defined by the UTPCPL, 73 P.S. § 201-2.

97.     Pennsylvania law bars "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 P.S. § 201-3.  In particular, the law bars "[r]epresenting that goods or services have … characteristics … uses, benefits or quantities that they do not have" and engaging in "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2.

24

98.    By misrepresenting their trash removal and recycling hauling services, Defendants engaged in fraudulent and deceptive conduct which led Plaintiff and Class members to misunderstand the quality and cost of those services.

99.    Defendants knew that their trash removal and recycling hauling services would prove deficient, but still represented that they could be provided on certain days and at specific intervals. The days and frequency with which trash removal and recycling hauling services are performed are material to whether consumers buy those services.

100.    Defendants intended that consumers would believe and rely on the representation that their services would be performed on the agreed-upon days and at the agreed-upon frequencies.

101.    In actuality, however, Defendants' customers suffered many service interruptions.

102.    Reasonable consumers expect that trash removal and recycling services will be performed in the manner in which the parties agreed.  Plaintiff and Class members justifiably relied on Defendants' representation that the services would be performed on certain days and at specific intervals.

103.    Plaintiff and the Class members would not have bought, or would have paid substantially less for, the services had Defendants disclosed that those services were deficient and subject to frequent interruption.  Thus, Plaintiff and Class members suffered economic injury as a result of Defendants' deception.  All purchasers of Defendants' trash removal and recycling hauling services suffered ascertainable loss and damages as a direct and proximate result of Defendants' deceptive conduct.

104.    Plaintiff and Class members are entitled to recover actual damages or $100, whichever is greater. 73 P.S. § 201-9.2. They are also entitled to costs and reasonable attorneys' fees.

## NO ADEQUATE REMEDY AT LAW

105.    Plaintiff seeks damages and, in the alternative, restitution. Plaintiff is permitted to seek equitable remedies in the alternative because he has no adequate remedy at law.

106.    To begin, the elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims. For example, to recover under a breach of contract theory, Plaintiff must show that a contract was formed. Because obtaining damages requires additional showings not required for restitution, the equitable remedies that Plaintiff requests are more certain than the legal remedies that Plaintiff requests.

107.    Finally, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

## PRAYER FOR RELIEF

108.    Plaintiff seeks the following relief individually and on behalf of the Class proposed above:

- An order certifying the asserted claims, or issues raised, as a class action;

- An order appointing Plaintiff as a representative for the Class and appointing his counsel as lead counsel for the Class;

- An order awarding Plaintiff and all other Class members damages in an amount to be determined at trial for the wrongful acts of Defendants;

- A declaration that Defendants' deficient trash removal and recycling hauling services are in violation of agreements with their customers

and the "fuel and material surcharges" they impose have no basis in those agreements;

- An order enjoining Defendants from continuing to provide deficient trash removal and recycling hauling services and imposing baseless "fuel and material surcharges"; requiring Defendants to provide notice when they will fail to provide services as specified by day and frequency; and requiring Defendants to preserve all evidence relevant to this lawsuit and notify service recipients with whom it comes in contact of the pendency of this and related litigation;

- Nominal damages as authorized by law;

- Restitution as authorized by law;

- Pre- and post-judgment interest;

- Reasonable attorneys' fees and costs, as allowed by law; and

- Any additional relief that the Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

109.    Plaintiff demands a jury trial on all issues so triable.


Dated: January 18, 2024                     Respectfully submitted,

                                            By: /s/ *Zachary Arbitman*
                                            Alan M. Feldman
                                            Zachary Arbitman
                                            Samuel Mukiibi
                                            FELDMAN SHEPHERD WOHLGELERNTER TANNER
                                            WEINSTOCK & DODIG, LLP
                                            1845 Walnut Street, 21st Floor
                                            Philadelphia, PA 19103
                                            T: (215) 567-8300
                                            F: (215) 567-8333
                                            afeldman@feldmanshepherd.com
                                            egoldis@feldmanshepherd.com
                                            zarbitman@feldmanshepherd.com

                                            Blair H. Granger
                                            THE GRANGER FIRM
                                            1800 East Lancaster Avenue, Suite K

27

Paoli, PA 19301
T: (610) 640-7500
F: (610) 640-7505
blair.granger@thegrangerfirm.com

*Attorneys for Plaintiff and the Class*