IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAY SALYERS,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| **v.** | |
| **A.J. BLOSENSKI, INC.** | **NO.  23-4802** |
| **Defendant.** | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Jay Salyers has brought this putative class action against Defendant A.J.
Blosenski, Inc. ("AJB"), alleging that AJB failed to pick up his garbage and recycling as agreed.
Intervenor Georgi Becket now moves to modify the Confidentiality Order entered in this action
(the "*Salyers*" litigation) so that she can review, utilize, and share all the materials produced
during discovery in support of her forthcoming objections to a Proposed Class Action Settlement
Agreement in a separate, parallel proceeding in the Court of Common Pleas of Chester County
(the "*Cericola*" matter).  According to Becket, the *Cericola* matter involves similar factual and
legal contentions to those at issue in the *Salyers* litigation.  AJB opposes Becket's Motion,
which, for the reasons set forth below, shall be denied.

### I.    BACKGROUND

#### A.    The Confidentiality Order

On March 20, 2024, this Court entered a Confidentiality Order governing the production
and subsequent use of certain sensitive materials in the *Salyers* litigation.  For instance, materials
may be designated as "CONFIDENTIAL" if a party determines that they contain, among other
things, "sensitive personal information, trade secrets, or confidential research, development, or
commercial information" pertaining to business strategy.  Alternatively, materials containing
"highly sensitive information," such as proprietary market research, financial forecasts, and

1

customer profiles, can receive a heightened designation of "HIGHLY CONFIDENTIAL—

ATTORNEYS' EYES ONLY."

Paragraph 8(a) of the Confidentiality Order provides that materials containing either of

these two confidentiality designations "shall not be used or disclosed by the parties or counsel

for the parties or any other persons identified" in Paragraph 8(b) "for any purposes whatsoever

other than preparing for and conducting this Action in which the materials were disclosed

(including any appeal of this Action)." Paragraph 8(b), in turn, specifies the categories of

persons that are permitted to review materials designated as "CONFIDENTIAL," which include:

    i.    This Court, including court personnel;

    ii.    Court reporters engaged for depositions, hearings, and proceedings and
those persons, if any, specifically engaged for the limited purpose of
making photocopies of materials;

    iii.    Any mediator selected by the parties to the Action or the Court to mediate
the Action, including the respective employees and personnel retained by
such mediator and/or the mediator's firm to whom it is necessary or
prudent to disclose such matter in furtherance of perform the duties of the
mediator;

    iv.    The attorneys of record in the Action, including the respective employees
and personnel retained by such attorneys and/or law firms to whom it is
necessary or prudent to disclose such matter in furtherance of prosecuting
or defending the Action, such as litigation assistants, paralegals,
secretarial, and other clerical personnel;

    v.    In-house counsel for a party to the Action, including legal assistants and
other legal and clerical staff, to whom it is necessary or prudent to disclose
such matter in furtherance of the prosecuting or defending the Action;

    vi.    Vendors retained to assist in the Action by an attorney described in
subparagraph (iv) of this paragraph including, but not limited to, copying
and reproduction services, provided they sign the "Acknowledgement of
Understanding and Agreement to be Bound" attached as Attachment B to
this Order before being shown Confidential matter, and provided further
they do not retain any copies of any Confidential matter;

    vii.    Authors, originators, or recipients of the matter (including "bcc"

recipients), as specifically reflected on the face of the matter and/or in associated metadata, or any other person who otherwise is shown to have knowledge of the matter; provided, however, that any author, originator, or recipient that is neither a party nor a current employee or agent of a party must execute Attachment B, and a copy of that executed Attachment B must be retained by counsel for the party showing the Confidential material to that individual but need not be provided to counsel for the designating party absent a showing of good cause;

viii. Present and former employees, officers and directors of the party or non-party producing the Confidential matter; provided, however, that any such person that is neither a party nor a current employee or agent of a party must execute Attachment B, and a copy of that executed Attachment B must be retained by counsel for the party showing the Confidential material to that individual but need not be provided to counsel for the designating party absent a showing of good cause;

ix. Deponents and witnesses or prospective witnesses (and counsel for such witnesses); provided, however, that any such person that is neither a party nor a current employee or agent of a party must execute Attachment B, and a copy of that executed Attachment B must be retained by counsel for the party showing the Confidential material to that individual but need not be provided to counsel for the designating party absent a showing of good cause;

x. Consultants or experts (whether testifying or non-testifying), including investigators, employed by the parties or counsel for the parties to assist in the preparation and trial of the lawsuit, provided the consultants or experts sign the "Acknowledgement of Understanding and Agreement to be Bound" attached as Attachment B to this Order before being shown Confidential matter;

xi. Insurers of the Defendants in the Action;

xii. Individual parties to the Action, including management representatives of corporate parties; and,

xiii. Other persons only upon prior written consent of the producing party or upon order of the court and on such conditions as are agreed to or ordered.

Paragraph 8(c) limits the disclosure of materials designated as "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" to only those persons identified in Paragraphs 8(b)(i)-(vi), (ix), and (x).

Paragraph 10, meanwhile, sets forth a protocol for the subsequent filing of any materials covered by either of the two confidentiality designations. It provides that a party must take "appropriate action" to ensure that those materials receive "proper protection from public disclosure," which can be accomplished by: (1) "filing a redacted document with the prior written consent of the designating party"; (2) "where appropriate (*e.g.*, in relation to discovery and evidentiary motions), submitting the materials solely for *in camera* review"; or, (3) "where the preceding measures are not adequate, seeking permission" from this Court "to file the materials under seal pursuant to the procedural steps set forth in Local Civil Rule 5.1.2.(6), EDPA, or such other rule or procedure as may apply in the relevant jurisdiction."

Finally, Paragraph 14 states that the Confidentiality Order "shall be subject to modification on motion of any party or any other person who may show an adequate interest in the matter to intervene for purposes of addressing the scope and terms of this Order."

### B.    Procedural Background

In the months following the issuance of the Confidentiality Order, AJB produced thousands of documents which carried the two confidentiality designations. Fact discovery concluded on October 9, 2024. Days before that deadline, Salyers moved to modify the Confidentiality Order to allow his counsel to share documents produced by AJB with putative class members, objectors, and court personnel in the *Cericola* matter. Those documents, he argued, would be critical to support forthcoming submissions in opposition to the Proposed Class Action Settlement Agreement in that matter. In response, AJB submitted that Salyers should not be permitted to share the documents with any party in the *Cericola* matter because he had already opted out of that class settlement and thus had no further cognizable interest in the matter.

The Court denied Salyers' Motion, explaining that while he is "entitled to use these

confidential documents to advance his own interests in the *Salyers* litigation, his Motion [was] procedurally improper because it [was] essentially one made on behalf of non-parties and their interests in a separate proceeding in state court."  *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 (3d Cir. 1994) ("[T]he procedural device of permissive intervention is appropriately used to enable a litigant who was not an original party to an action to challenge protective or confidentiality orders entered in that action").

In November 2024, Becket—a putative class member in the *Salyers* litigation and an objector in the *Cericola* matter—moved to intervene in the *Salyers* litigation pursuant to Federal Rule of Civil Procedure 24(b) for the limited purpose of moving to amend the Confidentiality Order.  AJB opposed the Intervention Motion and filed a separate Motion to Stay the Proceedings.  In its Motion to Stay, AJB argued, among other things, that an "imminent" final ruling by the *Cericola* Court regarding the approval of the Proposed Class Action Settlement Agreement might preclude the putative class in the *Salyers* litigation from "relitigating the claims and issues . . . under the principles of release and *res judicata*," as both matters are substantially similar and involve the same putative class members.  AJB also submitted that Salyers had expressed his intention to file an Amended Complaint to include an additional state law claim, which might render several existing case deadlines moot.

Later that month, AJB's Motion to Stay was granted with respect to pending case deadlines for rebuttal expert reports, expert depositions, *Daubert* motions, motions for class certification, and motions for summary judgment, but denied as to all other pending motions such as Becket's Intervention Motion and Salyers' forthcoming Motion to Amend his Complaint.  Becket's Intervention Motion was granted shortly thereafter with an instruction to the Clerk of Court to docket the present Motion to Modify the Confidentiality Order, which was included as

an exhibit to the Intervention Motion.

## II.    LEGAL STANDARD

A district court "retains the power to modify or lift confidentiality orders that it has

entered." *Pansy*, 23 F.3d at 784.  There is a two-step analysis when considering proposed

modifications to such orders.  First, "[t]he party seeking to modify the order of confidentiality

must come forward with a reason to modify the order.  Once that is done, the court should then

balance the interests, including the reliance by the original parties to the order, to determine

whether good cause still exists for the order." *Id*. at 790.  In addition to reliance, other

interests—which are colloquially known as the *Pansy* factors—may be considered, such as

whether: (1) disclosure will violate any privacy interests; (2) the requested information is being

sought for a legitimate purpose or for an improper purpose; (3) disclosure of the information will

cause a party embarrassment; (4) confidentiality is being sought over information important to

public health and safety; (5) the sharing of information among litigants will promote fairness and

efficiency; (6) a party benefitting from the order of confidentiality is a public entity or official;

and, (7) the case involves issues important to the public.[1]  *In re Avandia Mktg., Sales Pracs. &*

---

[1] Citing *Pichler v. UNITE*, 2008 WL 11363813, at *2 (E.D. Pa. Feb. 7, 2008), *aff'd* 585 F.3d 741 (3d Cir. 2009), AJB contends that balancing the *Pansy* factors is only "appropriate and relevant when the public has some right to access the relevant records," such as a "common law right of access to judicial records or a statutory right to documents like the Pennsylvania Right to Know Act" where "there is a strong presumption that the public may view the records."  To that end, AJB maintains there is no need to engage in *Pansy* balancing here, as significant portions of the discovery materials contain proprietary information that would not otherwise be publicly available.

However, AJB's argument ignores the Third Circuit's recent opinion in *In re Avandia*, which clarified the "three distinct standards" that should be applied "when considering various challenges to the confidentiality of documents":

> We apply the factors articulated in *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 783-92 (3d Cir. 1994), when we review orders preserving the confidentiality of discovery materials pursuant to Federal Rule of Civil Procedure 26.  But we apply the more rigorous common law right of access when discovery materials are filed as court documents.  In addition to recognizing fewer reasons to justify the sealing of court records, the public right of access—unlike a Rule 26 inquiry—begins with a presumption in favor of public access.  Finally, the First Amendment right of public access attaches to, inter alia, civil trials.

*Prod. Liab. Litig.*, 924 F.3d 662, 671 (3d Cir. 2019) (citing *Glenmede Tr. Co. v. Thompson*, 56

F.3d 476, 483 (3d Cir. 1995); *Pansy*, 23 F.3d at 787-91). These factors "are neither mandatory

nor exhaustive." *Id.*

### III.    DISCUSSION

Becket proposes various edits to Paragraphs 8 and 10 of the Confidentiality Order issued

in the *Salyers* litigation. Starting first with her requested revisions to Paragraph 8, which pertain

to the categories of persons that are permitted to review materials designated as

"CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY."

Specifically, Becket's proposal would expand access to the following additional persons

associated with the *Cericola* matter: (1) the *Cericola* Court and its personnel; (2) court reporters;

(3) mediators; and, (4) all attorneys of record, including counsel for any objectors to the

Proposed Class Action Settlement Agreement, and their personnel. Her requested revisions to

Paragraph 10, meanwhile, would extend and impose the restrictions on the subsequent filing of

materials carrying one of the two confidentiality designations upon parties' submissions in "*any*

*other court*." To take just one example, the last sentence of Paragraph 10 would state: "The

parties understand that materials may be filed under seal only with the permission of the Court *or*

*any other court* after proper motion pursuant to Local Civil Rule 5.1.2.(6), EDPA, *the*

---

924 F.3d at 670 (cleaned up); *cf. id.* at 671 n.7.

Thus, the *Pansy* factors should be balanced when considering motions to modify confidentiality orders—even when the documents subject to such orders are non-public in nature, as is the case here. *See, e.g.*, *Eddystone Rail Co., LLC v. Bridger Logistics, LLC*, 2022 WL 704206, at *2-3 (E.D. Pa. Mar. 9, 2022) (applying the *Pansy* factors to a motion to modify a protective order seeking to share internal accounting records produced in discovery with parties in a federal proceeding); *Gardner Denver, Inc. v. Arch Ins. Co.*, 2021 WL 7967550, at *1 n.1 (E.D. Pa. June 28, 2021) (applying same framework to a request to modify a protective order to share confidential email communications between company executives with parties in a state proceeding).

*Pennsylvania Rules of Civil Procedure, or any other procedures as may apply in the relevant jurisdiction*."

Against this backdrop, Becket first argues that her proposed modifications to the Confidentiality Order are necessary so that she (as an objector), counsel for all parties, and the *Cericola* Court can "assess the reasonableness" of the proposed class-wide settlement in that matter. "Access to protected information for use in another case may be a legitimate reason for modification of a protective order." *In re Zostavax Prods. Liab. Litig.*, 2018 WL 5303326, at *2 (E.D. Pa. Oct. 24, 2018) (citing Charles Alan Wright, *et al.*, 8A Fed. Prac. & Proc. Civ. § 2044.1 (3d ed. 1994). This is because the sharing of discovery materials across matters involving similar parties or claims can be efficient and spare parties duplicative and costly efforts. *See, e.g.*, *Sandoz*, 2021 WL 4744893, at *2 ("Allowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery." (quoting *Oracle Corp. v. SAP AG*, 2010 WL 545842, at *1 (N.D. Cal. Feb. 12, 2010)). With this in mind, Becket has satisfied her burden at this first stage of the inquiry, as she has proffered a legitimate reason for modifying the Confidentiality Order. *See In re Linerboard Antitrust Litig.*, 333 F. Supp.2d 333, 338, 341 (E.D. Pa. 2004) (granting an intervenor's motion to modify a confidentiality order to permit access to discovery material relevant to a separate action involving common facts and legal issues); *Sandoz Inc. v. Lannett Co., Inc.*, 2021 WL 4744893, at *1 (E.D. Pa. Oct. 12, 2021) ("[T]his case and the parallel arbitration have claims that are 'closely related.' . . . As the facts of these claims overlap, the Lannett depositions from this case could tend to support Sandoz's claims against Cediprof. The relevance of the depositions to the arbitration provides a reason to modify the protective order.").

Proceeding to the next step, the parties' reliance on the Confidentiality Order and the

seven *Pansy* factors—none of which are "exhaustive" or "mandatory"—must be weighed to determine whether good cause exists for the proposed modifications. *See In re Avandia*, 924 F.3d at 671. As a natural extension of her argument at step one, Becket argues that factor two—whether the information is being sought for a legitimate purpose—and factor five—whether the sharing of information among litigants promotes fairness and efficiency—both support modification since the value in sharing confidential materials between litigants in parallel cases has been repeatedly recognized by sister courts within this Circuit. *See, e.g.*, *In re Linerboard Antitrust Litig.*, 333 F. Supp.2d at 338, 341; *Sandoz Inc.*, 2021 WL 4744893, at *1. She further claims that factor four—whether confidentiality is being sought over information important to public health and safety—weighs in favor of modification, as the discovery materials in this case were produced in response to claims that AJB failed to collect trash in various communities, which is ostensibly a public health concern. For this same reason, she argues that factor seven—whether this case involves issues important to the public—also supports modification.

That said, the first factor—whether disclosure will violate any privacy interest—coupled with AJB's proffered reliance interest in maintaining the existing protections afforded by the Confidentiality Order are dispositive in this case and ultimately outweigh any value in Becket's proposed modifications. AJB asserts that it "relied on the Confidentiality Order when producing voluminous records that contain confidential and highly confidential business information, including documents that would be detrimental to its business should competitors gain access to the documents" such as internal budgets, profit and loss statements, and its entire customer database. Becket attempts to downplay any risks associated with her proposed modifications by arguing that "all parties in the *Cericola* matter will still be bound by all protections articulated in the Confidentiality Order, including the filing provisions of Section 10."

But Becket's argument misses the mark for several reasons.  First in *Sandoz, Inc. v. Lannett Company*, a case Becket relies on heavily throughout her brief, good cause to modify the protective order was found because any of the opposing party's privacy-related concerns were mitigated by the following facts: (1) "the modification [was] limited in scope" because the moving party only sought three depositions; (2) the parallel arbitration proceeding [was] "a closed proceeding without public filings"; and, (3) the arbitrator entered "an identical protective order" that "limit[ed] disclosure of the selected depositions to 'Outside Counsel's Eyes Only.'" 2021 WL 4744893, at *1.  Here, however, Becket is seeking a blanket authorization to utilize and share thousands of documents with several parties in a public state court proceeding in which there is no analogous confidentiality order in place to limit public disclosure.  Although Becket maintains that her proposed revisions to Paragraph 10 would extend and impose the requirements of the Confidentiality Order upon the *Cericola* Court and "any other court," this Court "should not, will not, and does not want to supervise . . . compliance with a protective order" in a separate state court proceeding.  *Eddystone Rail Co.*, 2022 WL 704206, at *3. Putting aside the issue of whether there is jurisdiction to issue such an order, the *Cericola* Court "should have discretion to supervise the case in front of it without interference from this Court." *Id.*  Therefore, after considering the totality of the circumstances, good cause does not exist to modify the Confidentiality Order, and Becket's Motion shall be denied.

An appropriate Order follows.

**BY THE COURT:**

**S/ WENDY BEETLESTONE**

**WENDY BEETLESTONE, J.**

10